(C.D. 2165)

Border Brokerage Co. *v.* United States

United States Customs Court, Second Division

(Decided April 11, 1960)

*Lawrence & Tuttle* (*Barnes, Richardson & Colburn* by *Edward N. Glad* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Sheila N. Ziff*, trial attorney) for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., not participating

RAO, Judge: The instant case raises the question of the dutiable status of certain imported machine parts, consisting of transfer chairs with chain, and relay valves, for use in connection with whole log debarking machines. The collector of customs at the port of entry classified these articles within the provisions of paragraph 372 of the Tariff Act of 1930, for parts of machines, not specially provided for. Accordingly, duty was assessed on the transfer chairs and chain at the rate of 13¾ per centum ad valorem, pursuant to the modification of said paragraph in the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and on the relay valves at the rate of 11½ per centum ad valorem, as provided in the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108.

Plaintiff claims that said merchandise is more specifically provided for in paragraph 372, as modified by said trade agreements, at the respective rates of 10 per centum and 8½ per centum ad valorem, depending upon the date of entry, as parts of machines for making paper pulp or paper.

The pertinent modifications of paragraph 372 read as follows:

As modified by T.D. 52739, *supra*:

Machines, finished or unfinished, not specially provided for:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Machines for making paper pulp or paper_____ 10% ad val.
Other (except * * *)_____ 13¾% ad val.

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Other _____ The rate for the article of which they are parts.

As modified by T.D. 54108, *supra*:

Machines, finished or unfinished, not specially provided for:

\*       \*       \*       \*       \*       \*       \*

> Combination candy cutting and wrapping machines; machines for making paper or paper pulp; machines for packaging pipe tobacco; machines for wrapping candy; and machines for wrapping cigarette packages.    8½% ad val.

\*       \*       \*       \*       \*       \*       \*

> Other (except \* \* \*)                                                8½% ad val.
>
> Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part.    The rate for the article of which they are parts.

The record in this case consists of the testimony of one witness called on behalf of plaintiff, together with certain pictorial and documentary exhibits. It establishes that the imported articles are used in connection with machinery for the removal of the bark from whole logs. The relay valves serve to control and vary the air pressure necessary for the debarking process; the transfer chairs and chain, which are in a cradle shape, help direct the log and carry it through the center of the machine. According to the witness, both items are essential parts of whole log debarkers, without which those machines would not function for their intended purpose. Although there is evidence in the form of advertising matter describing the relay valves tending to indicate that such valves have a multiplicity of uses (defendant's exhibit A), the witness was of opinion that in the particular size imported, the valves were dedicated to use in whole log debarkers.

A whole log debarker, of the kind here involved, and represented by plaintiff's illustrative exhibits 2, 3, and 4, is a device used mostly by sawmills, although it is sometimes sold to pulpmills. The main purpose of debarking a whole log with this machine is to permit the utilization of the waste otherwise resulting from the squaring of logs. When a log is squared without prior debarking, the edges and slabs which are cut off are useless, and can only be burned. If the bark is removed first, the slabs and edges can be sold to pulpmills for making pulp; but pulpmills have no use for these cuttings if the bark has not been removed, as they do not make satisfactory pulp.

The record also establishes that there are several different types of log debarkers. Plaintiff's witness was familiar with three. He described them as mechanical log debarkers, as illustrated by plaintiff's illustrative exhibits 2, 3, and 4; hydraulic barkers, which use high-pressure water; and veneer debarkers, used in the plywood industry for barking short logs.

It is the position of plaintiff in this case that the subject items are parts of whole log debarking machines, and that such machines are machines for making paper or pulp. The argument is made that since the only reason a lumbermill uses a whole log debarker is to prepare the slabs or edgings for use in making pulp or paper, the whole log debarker is a machine used in the process of making paper pulp or paper.

Counsel for defendant urges that a log debarker is too remote from the pulp or papermaking process to be considered a machine for making either product. It is argued that a log debarker makes neither paper nor pulp, nor even slabs and edgings, and that a machine which merely prepares a material for use by another machine does not fall into the same category as the machine which processes that material, citing *United States* v. *Frank P. Dow Co., Inc.*, 29 C.C.P.A. (Customs) 48, C.A.D. 169.

The *Dow* case was concerned with the construction of the provision in paragraph 372 of the Tariff Act of 1930, for parts of paper box machinery, in connection with certain parts of a machine for corrugating paper, a material subsequently used in the making of corrugated paper containers. In holding that the initial machine was not encompassed by the provision for paper box machinery, the court stated:

We think that in the instant case it cannot be logically held that the term "paper-box machinery" and the parts provision cover parts of a machine which merely prepares material used in the manner described. To hold otherwise, we think, would lead to confusion. * * *

* * * * * * *

We hold, therefore, that the term "paper-box machinery" means machinery used principally in the making of paper boxes. The rollers in controversy are not parts of paper-box machinery but are parts of a machine used to make material, most of which, according to the testimony submitted by the importer, is chiefly used by one American firm to make paper boxes. The mere fact that in the instance at bar the rollers may be used in the same factory where paper boxes are made is a matter of no importance. If the rollers were parts of paper-box machinery, their operation away from a paper-box factory would hardly change the situation. To hold that a machine that makes the components of a paper box is for that reason paper-box machinery would lead us far afield.

It would appear that the principle of the *Dow* case has relevant application to the issue raised in the instant case, and that a machine which prepares wood for use in the manufacture of paper pulp is not itself a machine for making paper pulp or paper, within the contemplation of the provision here invoked. *A forticri*, where it is shown as here that a machine is primarily designed to eliminate

waste, and its operations have the effect of making available for ulti-mate use by the pulp and paper industry material which would other-wise be destroyed, the machine would not properly be described as a device for making paper pulp or paper.

Counsel for plaintiff contends, however, that log barkers are a class of machine which were purposefully included within the pro-vision for machines for making paper pulp or paper, when that language was carved out of the tariff provision for machines, not specially provided for, by trade agreement negotiation. Reference is made to the following comment on the subject of pulp and paper machines and parts thereof in the 1948 Summaries of Tariff Information, volume 3, part 4, page 154:

Among the machines covered by this summary are (1) preparatory machines, such as *barkers*, chippers, grinders, chip crushers, and screens for preparing wood, * * *. [Italics added.]

It is, of course, both appropriate and proper to consider extraneous aids to the construction of language which is ambiguous or of doubtful tenor. *United States* v. *Good Neighbor Imports, Inc.*, 33 C.C.P.A. (Customs) 91, C.A.D. 321; *United States* v. *Weigert-Dagen et al.*, 39 C.C.P.A. (Customs) 58, C.A.D. 464. It is also apparent that the lan-guage "machines for making paper pulp or paper" is not so specific and definite as to furnish a guide for the determination of exactly which machines are so described. Accordingly, if the intent of the negotiators of the language here in issue can be ascertained, available data should be considered to effectuate that intent.

An *eo nomine* provision for machines for making paper pulp and paper, and parts thereof, first appeared in the trade agreement nego-tiated with Sweden in 1935. In the Digest of Trade Data, published by the United States Tariff Commission in July 1935, on the conces-sions granted in said agreement, the following comment on this new language is provided:

*Description and uses*

The above classification is intended to include machines used (1) in the prep-aration of wood, rags, and other fibrous material for conversion into pulp, (2) in conversion of the prepared material into pulp, (3) in refining or packaging such pulp preliminary to its use in making paper, and (4) in the manufacture of such pulp into paper. *The classification does not include* sawmill machines such as *slashers*, log conveyors, etc., and other *machines which though used in pulp mills have a* more *general use in the lumber and wood-using industries.*

Machines used in pulp mills include barkers, chippers, grinders, chip crushers, and screens for preparing the wood, or cutters, dusters, etc., for preparing rags, screens, refiners, presses, dryers, beaters, etc. The three types of machines com-monly used for the conversion of pulp into paper are the Fourdrinier, cylinder, and Yankee. [Italics supplied.]

In the 1948 Summaries of Tariff Information, from which plaintiff has quoted, we find the following additional statement:

This summary covers machines for making paper pulp and paper. It excludes equipment for recovering chemicals used in the various paper-making processes; it also excludes sawing machines, which, though used in pulp mills, are used more widely in the lumber and woodworking industries.

It is our opinion that the foregoing data evidence an intent upon the part of those who initiated this new language to restrict it to machines chiefly used in pulp mills, and to exclude machines primarily employed in other industries. The fact that barkers are a type of preparatory machine stated to be embraced by the provision does not necessarily entail that every mechanical unit for stripping bark from a log is *ipso facto a* machine for making paper pulp or paper.

The instant record reveals that there are several types of barkers, of which plaintiff's witness was familiar with three. Certainly, it could not seriously be contended that debarkers used in the plywood industry for removing the bark from short pieces of log were machines for making paper or pulp, merely because those machines respond to the name of barkers.

It is clear from the evidence in this case that the debarkers for which the subject articles were imported are chiefly used by sawmills, and that their primary purpose is to eliminate sawmill waste. That the incidental result of such operations is the production of a material suitable for use in the manufacture of paper or pulp, is insufficient to characterize the machine itself as designed for that ultimate purpose. Under the circumstances described in this record, it would seem that the process of debarking whole logs in the lumber industry is so remote from the operations of a paper or pulpmill as to preclude classification of the subject merchandise as parts of machines for making paper or pulp.

In the view that we have here taken, we deem it unnecessary to consider the contention of the defendant that the involved relay valves have not been shown to be parts of whole log debarkers.

Based upon the foregoing considerations, we hold that the instant transfer chairs with chains, and relay valves were properly classified by the collector as parts of machines, not specially provided for, in paragraph 372 of the Tariff Act of 1930, as modified, *supra*, with the consequent assessment of duty at the respective rates of 13¾ per centum ad valorem and 11½ per centum ad valorem. All claims in the protest are, therefore, overruled.

Judgment will be entered accordingly.