BEFORE THE SECOND DIVISION, SEPTEMBER 26, 1961

No. 66095.—R. J. Saunders Co., Inc. v. United States, protests 59/24038, etc. (New York).

LAWRENCE, Judge: At the trial, the above four protests were consolidated for decision.

The merchandise to which the protests relate, invoiced variously as "Liquid air engines," "Parts for liquid air engines," and "Liquid air engines and parts," was classified by the collector of customs as articles having as an essential feature an electrical element or device, or as parts thereof, in paragraph 353 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 353), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and duty was imposed thereon at the rate of 13¾ per centum ad valorem.

Plaintiff claims that the merchandise should be classified as machines, finished or unfinished, not specially provided for, and parts thereof, in paragraph 372 of said act (19 U.S.C. § 1001, par. 372), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and dutiable at the rate of 12 per centum or 11½ per centum ad valorem, depending upon the date of entry.

The case was submitted for decision upon the testimony of one witness who was called on behalf of the plaintiff and the following exhibits:

Plaintiff's illustrative exhibit 1: A diagram or drawing, illustrating the imported machinery after it is set up with two different types of motive power. The left-hand side of the exhibit shows the machine set up with an electric motor, and the other side of the exhibit illustrates the machine if used with a diesel engine or with a gas engine drive.

Plaintiff's exhibit 2: A micro switch, an electrical device which was imported with the machines.

Defendant's exhibit A: A brochure distributed by Philips Electronics and the North American Philips, containing pictorial representations of the machines and parts in controversy, to be driven by motor power.

Plaintiff's witness, Joseph Meisler, testified that he was in business with Gyro Generators, a division of North American Philips above referred to; that he was a mechanical engineer, employed as technical manager of that company. He had practiced his profession since 1936 and, from his experience installing liquid air engines, he had become familiar with their construction, functions, and accomplishments; that they were used "to provide either one of two things, refrigeration at very low temperatures or to liquefy gasses, such as air, oxygen, nitrogen, and so on."

The merchandise, in its condition as imported, was not equipped with a motor or other means of motivation. After importation, however, an electric motor is attached in order that the machines may function.

The witness testified on direct examination that the imported machines did not require electric power to operate them; that they may be powered by a diesel engine or gas engine drive, which he explained as follows:

In the case of the diesel or the gas engine drive, we would require a gear reducer. It is a mechanical means of reducing the speed of the main shaft that drives our equipment. Normally, the gas engine or the diesel engine operate at much lower speed. I am sorry, the diesel engine operates at much lower speed than is required by our equipment so that we would have to reduce it. We would have to have this mechanical means of changing the speed from the diesel which is low to the speed which we are required to operate, so that is a mechanical device.

On cross-examination, it was developed that, in its normal use, the imported machine employs electricity to energize it. Plaintiff's witness had no personal knowledge that the imported machine had been used with a gas engine or a diesel engine, but stated that customers had requested his company "* * * to design the system with request of a gas engine."

Upon this point, plaintiff cites *United States* v. *Baker Perkins, Inc., R. F. Downing Co., Inc.*, 46 C.C.P.A. (Customs) 128, C.A.D. 714. The court was there dealing with a machine described as a cocoa liquor grinding mill. After importation, the importer intended to attach to it a 40-horsepower electric motor which the trial court had held was "the only practicable means of energizing the machine," and that the cocoa liquor grinding mill was an article having as an essential feature an electrical element, applying the rule in *United States* v. *Dryden Rubber Co.*, 22 C.C.P.A. (Customs) 51, T.D. 47050.

In its opinion in the *Perkins* case, the appellate court referred to the testimony of the importer, the sole witness in that case, who admitted that the machine "could be powered by means other than an electric motor, such as a steam engine, a diesel engine or gasoline motor." The court then disposed of the contention that electric power was the only practical commercial motivating force by pointing out that the mere contemplation of the use of electric motor power was not sufficient to bring it within the scope of the language in paragraph 353 as an article having as an essential feature an electrical element.

In the instant case, while it appears that the subject machines have heretofore been equipped with electric motors, the testimony also shows that, by means of a gear reducer, the machines could be equipped to use either a gas engine or a diesel engine for motive power.

One of the tests for classification in paragraph 353, which was laid down in the *Dryden* case, *supra*, is that the machine must be essentially an electrical article. In other words, "* * * The electrical feature must be an essential feature, without which the article will not function, normally, for the purposes intended, * * *." Based upon the testimony of the witness Meisler, the "essential feature" test has not been established.

The micro switch, represented by exhibit 2, is shown on the diagram, exhibit 1, and is located on the lower-left section of the engine. It serves as a safety device, and its function is to stop the operation of the machine when the oil pressure provided by an internal pump to the lubrication system is low. The micro switch is so constructed that it will shut down the engine completely and prevent damage to it. We do not regard that feature as sufficient to characterize the imported machine as one having as an essential feature an electrical element. The micro switch stands in relation to the subject machines as did the electro-magnet separator with relation to the grinding mill in the *Perkins* case, which was used to extract metal particles from the cocoa nibs, as to which the court stated:

* * * There is no direct connection between the function of the electro-magnet and the mill *per se*, the former merely constituting an auxiliary although a desirable step in the reduction of cocoa nibs to chocolate liquor.

The analogy to the present case is obvious.

For the reasons stated, the claim of plaintiff for classification of the importations as machines, finished or unfinished, not specially provided for, and parts thereof, in paragraph 372 of the Tariff Act of 1930, as modified by the Sixth protocol, *supra*, is sustained and the merchandise in issue is dutiable at the appropriate rates of duty, depending upon the dates of entry.

Judgment will issue accordingly.