(C.D. 2347)

OWENS-ILLINOIS GLASS COMPANY *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 18, 1962)

*Hume & Stewart* (*Eugene L. Stewart* of counsel) for the plaintiff.
*Joseph D. Guilfoyle*, Acting Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: The merchandise in question is made up of six major pieces of equipment, consisting of a hydraulically controlled four-roll paper-making press, an oil pressure station, an electric transformer, an ignitron electronic tube power controlling unit, an electronic control panel, and a cart for adjusting wire rolls, all of which were assessed with duty at the rate of 13¾ per centum ad valorem under the provisions of paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as articles having as an essential feature an electrical element or device, and not specially provided for.

Plaintiff herein contends that said merchandise is properly dutiable at only 8½ per centum ad valorem as machines for making paper or

paper pulp under paragraph 372 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108. It is alternatively claimed by plaintiff herein that, if the court should disagree with the primary claim herein, said merchandise is, nevertheless, dutiable at the rate of 12½ per centum ad valorem as a heater under the provisions of paragraph 353 of the Tariff Act of 1930, as modified by said Torquay protocol, *supra*.

The pertinent text of the statutes relied upon is here set forth:

Paragraph 353 of the Tariff Act of 1930, as modified by the Torquay protocol, *supra*:

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

    Electric motors, furnaces, heaters, and ovens_____ 12½% ad val.

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

    Other (* * *) _____ 13¾% ad val.

Paragraph 372 of the Tariff Act of 1930, as modified by the Sixth protocol, *supra*:

Machines, finished or unfinished, not specially provided for:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

    * * * machines for making paper or paper pulp; * * *\_\_\_\_\_ 8½% ad val.

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Parts, not specially provided for, wholly or in chief value    The    rate    for
   of metal or porcelain, of any article provided for in any    the  article  of
   item 372 in this Part.    which they are
   parts.

The record herein consists of a stipulation received in evidence as plaintiff's exhibit 1, blueprints and photographs, received as plaintiff's collective exhibit 2, and the testimony of Edwin R. Burr, a well-qualified mechanical engineer who supervised the installation of the involved merchandise in plaintiff's plant.

Based upon the stipulation, in which it is agreed that the merchandise imported herein consists, among other things, of "A hydraulically controlled four-roll paper-making press * * *" and the testimony of Mr. Burr, there appears to be no question that the imported merchandise is a paper-making machine. The question before the court is whether a paper-making machine having electrical features is properly dutiable under paragraph 353, *supra*, or under the *eo nomine* provision contained in paragraph 372, *supra*. Before this question may be answered, the court must consider a number of legal principles raised by both parties in their well-prepared briefs.

Since the article we have before us is a paper-making machine, it will be unnecessary to discuss the mechanical operations in the

manufacture of paper. We will, however, first consider the electrical features of the involved merchandise. Based upon the stipulation and the testimony of Mr. Burr, it appears that the motive power for the operation of the press itself is a steam turbine. There are, however, two electrically powered pumps which are utilized by the hydraulic or oil-pressure system, which are both turned on for 5 minutes at the beginning of the operation of the press and then their use is discontinued. It also appears that the transformer, the ignitron electronic tube power controlling unit, and the electronic control panel are all utilized when the paper-making press is operating with the conductive heating roll. The evidence establishes that the involved machine is quite efficient in removing moisture from the sheet of paper being produced, without the conductive heating unit on the basis of hydraulic pressure alone. It also appears that the imported merchandise is not regularly used in this manner because of an apparent defect in the conductive heating roll. In operation, the conductive heating roll, by utilizing electricity, facilitates the withdrawal of water from the paper being manufactured. Mr. Burr also testified that the electrically initiated hydraulic system could utilize other sources of hydraulic pressure which are available in the plant.

Based upon the record as made herein, plaintiff contends that the imported paper-making press and accompanying equipment do not have as an essential feature an electrical element or device.

The question of whether an article is one which has as an essential feature an electrical element or device has been before this court on many occasions. In the case of *United States* v. *Dryden Rubber Co.*, 22 C.C.P.A. (Customs) 51, T.D. 47050, the basic rule for determination of this principle was set forth as follows:

There are two inquiries, therefore, when the question of the classifiability of an article under this division of the paragraph is under consideration: First, is it essentially an electrical article? The electrical feature must be an essential feature, without which the article will not function, normally, for the purposes intended, for, it must be manifest, that if it be not an electrical article, it does not come within the division at all. Second, if it is such an electrical article, is it an article named in the language, or within the class of articles named in this paragraph?

From what has been said, it follows that if the article, when it is imported, is designed and constructed to use electrical power, or other power, interchangeably, then it has not, as an essential feature, an electrical element or device.

On the other hand, if, when the article is imported, it is so constructed as to utilize electrical power solely, and, therefore, is, essentially, an electrical article, and its various parts are imported, are intended to be used, and are used, together, as was the case with the imported merchandise, then no reason can be seen why it should not be considered, for dutiable purposes, within the scope of the third division of this paragraph, for in such case, we think the article should be held to be included within the class of articles named in the paragraph.

This well-established principle is presently considered by the court as a means for determining whether an article falls within the purview of that portion of paragraph 353 involved herein. See *United States* v. *Mill & Mine Supply Co.*, 30 C.C.P.A. (Customs) 128, C.A.D. 224; *United States* v. *Baker Perkins et al.*, 46 C.C.P.A. (Customs) 128, C.A.D. 714.

It is quite apparent that the involved paper-making press can be and actually is efficiently operated as a straight mechanical press not utilizing the electrical heating element. It is, therefore, our opinion that said electrical conductive heating element feature is not essential to the operation of the paper-making press.

The two electric motors which operate the hydraulic pumps must next be considered by the court. From the record as indicated, *supra*, these electrically operated pumps are utilized for approximately 5 minutes at the start of operations and then are discontinued. In the case of *Norman G. Jensen et al.* v. *United States*, 25 Cust. Ct. 27, C.D. 1258, this court held, in considering the classification of certain filter press plates and frames, that the limited operation of the electric motor and hydraulic pump was sufficient to remove the machine from classification under the provisions of paragraph 353, since they were inoperative during the filtering process which is the prime function of the machine. By the same token, the electrically operated hydraulic pumps herein are inoperative during the operation of the paper-making press. In addition thereto, the testimony clearly indicates that any source of hydraulic power, which hydraulic power is available in the plant, could operate these pumps. It is, therefore, our considered opinion that the imported merchandise does not fall within the purview of paragraph 353 of the Tariff Act of 1930, as modified, *supra*, as an article having as an essential feature an electrical element or device.

Based upon the foregoing findings of the court that the involved merchandise is not within the purview of paragraph 353 of said act, *supra*, the question of the proper classification of the imported articles must next be considered. The record testimony and the stipulation clearly establish the merchandise in question to be a paper-making machine. Paragraph 372 of the Tariff Act of 1930, as originally enacted, covered machines but did not provide *eo nomine* for paper-making machines. In the case of *Peter J. Schweitzer (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 285, T.D. 42872, certain endless belts, composed of wool, for use on a Fourdrinier paper-making machine, were held to be properly dutiable as "parts" of "machines * * * not specially provided for," under paragraph 372 of the Tariff Act of 1922, rather than as "woven fabrics" under paragraph 1109 or as "manufactures" under paragraph 1119 of the Tariff Act of 1922.

Subsequently, in the case of *Border Brokerage Co.* v. *United States*, 44 Cust. Ct. 124, C.D. 2165, affirmed *Same* v. *Same*, 48 C.C.P.A. (Customs) 113, C.A.D. 774, certain log debarkers were held not to be parts of paper-making machines. This court reviewed the legislative history of the provision and quoted the following information:

* * * In the Digest of Trade Data, published by the United States Tariff Commission in July 1935, on the concessions granted in said agreement, the following comment on this new language is provided:

*Description and uses*

The above classification is intended to include machines used (1) in the preparation of wood, rags, and other fibrous material for conversion into pulp, (2) in conversion of the prepared material into pulp, (3) in refining or packaging such pulp preliminary to its use in making paper, and (4) in the manufacture of such pulp into paper. *The classification does not include sawmill machines such as slashers, log conveyors, etc., and other machines which though used in pulp mills have a more general use in the lumber and wood-using industries.*

Machines used in pulp mills include barkers, chippers, grinders, chip crushers, and screens for preparing the wood, or cutters, dusters, etc., for preparing rags, screens, refiners, presses, dryers, beaters, etc. The three types of machines commonly used for the conversion of pulp into paper are the Fourdrinier, cylinder, and Yankee. [Italics supplied.] [Italics quoted.]

In the 1948 Summaries of Tariff Information, from which plaintiff has quoted, we find the following additional statement:

This summary covers machines for making paper pulp and paper. It excludes equipment for recovering chemicals used in the various paper-making processes; it also excludes sawing machines, which, though used in pulp mills, are used more widely in the lumber and woodworking industries.

This legislative and judicial background is given since counsel for defendant contends that the trade negotiators may only change the rate of duty but cannot, in effect, reclassify an article. It is apparent that paper-making machines, since at least the time of the Tariff Act of 1922, have been found to be properly classifiable under the provision for machines, not specially provided for. The trade negotiators have not reclassified the merchandise but have merely reduced the rate of duty of one of the machines, not specially provided for, to wit, paper-making machines. This is clearly within the Presidential powers given under section 350 of the Tariff Act of 1930. *Atalanta Trading Corp.* v. *United States*, 42 C.C.P.A. (Customs) 90, C.A.D. 577.

In view of the foregoing, we are of the opinion that the imported merchandise is properly dutiable at 8½ per centum ad valorem under paragraph 372 of said act, as modified, *supra*, as machines for making paper. The alternative claim of plaintiff herein under paragraph 353 of said act, as modified, *supra*, is overruled.

Judgment will be rendered accordingly.