(C.D. 2905)

BROWN BOVERI CORP.
GEHRIG, HOBAN & CO., INC. } *v.* UNITED STATES

United States Customs Court, Second Division

(Decided February 27, 1967)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* of counsel) for the plaintiffs.

*Barefoot Sanders*, Assistant Attorney General (*Bernard J. Babb*, trial attorney), for the defendant.

Before RAO, FORD, and RICHARDSON, Judges

RICHARDSON, Judge: The merchandise of this protest, described on the invoice as 1 intermediate bearing and 1 journal bearing for compressor VWT 809, was imported at New York from Switzerland, and classified in liquidation under the provision for parts of articles having as an essential feature an electrical element or device in chief value of metal, and not specially provided for in 19 U.S.C.A., section 1001, paragraph 353 (paragraph 353, Tariff Act of 1930) as modified by T.D. 52739. It is claimed by the plaintiffs that the merchandise should be classified under the provision for machines and parts, not specially provided for, in 19 U.S.C.A., section 1001, paragraph 372 (paragraph 372, Tariff Act of 1930) as modified by T.D. 54108.

The competing tariff provisions read as follows:

[Par. 353, as modified] Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\*       \*       \*       \*       \*       \*

Other (* * *)_____ 13¾% ad val.

Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part (not including X-ray tubes or parts thereof)      The same rate of duty as the articles of which they are parts

[Par. 372, as modified] Machines, finished or unfinished, not specially provided for:

\*       \*       \*       \*       \*       \*

Other (* * *)_____ 11½% ad val.

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part      The rate for the article of which they are parts

Albert Bertschmann, a graduate mechanical engineer in the employ of Brown Boveri Corp. (New York) as supervisor of the mechanical department, and who was formerly in the employ of Brown Boveri Co. (Switzerland), was the only witness at the trial. It was brought out on direct and cross-examination of the witness that the involved merchandise constitutes two of three types of babbitt-lined anti-friction bearings which are manufactured by Brown Boveri Co. as constituent parts of isotherm compressors which the company manufactures.

These isotherm compressors are units in a complex of machines and other apparatus which are used in the plant manufacture of nitric acid. In evidence as plaintiffs' illustrative exhibits 1 and 2 are photographs depicting plant installations of isotherm compressors and related equipment, including a "close up" view of the particular bearings in issue. The VWT 809 compressor is one of four sizes of isotherm compressors which are imported by Brown Boveri Corp. (New York) and sold and serviced in the United States. The involved bearings function as supporting parts for the compressor's rotor shaft which carries 9 impellers, and revolves at a speed of about 7,000 revolutions per minute in compressing air up to about 120 pounds to provide about 26,000 cubic feet of air per minute to a nitric acid process.

It was not established in the evidence what the precise motive power is for the compressor of which the involved bearings are said to be a part. However, it was established that the isotherm compressor of Brown Boveri manufacture, of which the VWT 809 compressor is typical, is designed to utilize either of two types of motive power applications. One type of installation involves partial power recovery and features the use of a kind of gas turbine called an "expander" (utilizes nitrogen residue) in conjunction with a synchronous electric motor to drive the compressor. According to Mr. Bertschmann, the "expander" supplies ⅔ of the total power input which powers the compressor and the electric motor supplies the remaining ⅓ of the power input in this type of installation. The other type of power installation involves total power recovery and employs the "expander" in conjunction with a steam turbine (utilizing steam byproduct) to furnish the motive power to drive the compressor in what is called a self-sustaining operation. In this type of installation the electric motor is substituted for by the turbine which supplies the residual power needed to operate the compressor.

It appears that both types of power installations have been made by Brown Boveri Corp. in connection with isotherm compressors imported into the United States. Between 1954 and 1958 the imported compressors were mainly installed with motor power units; and since that time the compressor installations have gone to turbines for the residual power source. It was also brought out in the testimony that a conversion from one power application to the other does not involve any modification of the compressor which is coupled to the power source by means of a flexible coupling. The conversion involves only a change in the supporting foundation for the power unit and a cost of about $10,000 as against an overall cost for acquisition and installation of about $200,000.

As for electrical equipment other than the motor and the control panel therefor which is housed on the compressor's exterior in electric

motor installations,* the compressor has a pressure differential switch that controls the cooling water flow through the inter-coolers and a shaft guard which is mounted above the thrust bearing which, like the involved bearings, also supports the rotor shaft. The function of the shaft guard is to supervise the axial movement of the shaft.

There is no question in the case about the involved bearings being integral metal parts of the VWT 809 isotherm compressor. The only question involved here is whether the bearings are parts of an article having as an essential feature an electrical element or device. On the record before us we are of the opinion that the VWT 809 isotherm compressor is not an article which has an electrical element or device as an essential feature. It is clear on the evidence before us that regardless of which of the two types of power applications is used to drive the compressor, that electric power does not constitute the major source of the compressor's power input. Consequently, under settled principles of law classification of the compressor as an electrical article cannot rest upon the use of an electric motor, since the electric motor is at best an optional power source. *John A. Steer & Co.* v. *United States*, 24 CCPA 293, T.D. 48737. And as for the remaining electrical devices, it appears that these devices operate solely to detect and to correct or prevent malfunctioning of the compressor during its operative stages, and play no role in the actual operation of the compressor for the purpose for which it is constructed. These devices have been referred to as "safety devices" by Mr. Bertschmann. Hence, the presence of such "safety devices" in or on an article not otherwise essentially electric does not constitute such an article an electrical article for tariff classification purposes. *R. J. Saunders Co., Inc.* v. *United States*, 47 Cust. Ct. 319, Abstract 66095.

It follows from the foregoing that plaintiffs' claim for classification of the involved bearings as machine parts must be sustained.

Judgment will be entered accordingly.

(C.D. 2906)

---

*The witness testified that the electric control panel may be substituted for by a thermal control panel employing hydraulic power and control valves.