(C.D. 4167)

WILLIAM H. MASSON, INC. v. UNITED STATES

United States Customs Court, Second Division

(Decided January 28, 1971)

*Allerton deC. Tompkins* (*Irving Levine* of counsel) for the plaintiff.
*L. Patrick Gray, III*, Assistant Attorney General (*Velta A. Melnbrencis*, trial attorney), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

NEWMAN, Judge: The issue concerns the proper tariff classification for certain horse or livestock trailers imported from England in 1962, and described on the invoices as "Beaufort Double Mk. III Model Trailer" and "Farmers Hunt Mk. III Model Trailer." These trailers were assessed with duty by the Government at the rate of 19 per centum ad valorem under paragraph 397 of the Tariff Act of 1930, as modified, which covers articles of metal not specially provided for.

Plaintiff [1] claims alternatively that the merchandise is classifiable under one of the following provisions of the Tariff Act of 1930, as modified:

(1) Paragraph 1604 – Agricultural implements, wagons, and carts – free entry;

(2) Paragraph 353 – Articles having as an essential feature an electrical element or device – 12½ per centum ad valorem;

---

[1] Plaintiff, a customhouse broker, entered the merchandise for the account of Rice Trailer Agency, Inc., Monkton, Maryland, the ultimate consignee.

(3) Paragraph 372 – Machines not specially provided for – 10½ per-centum ad valorem.

For the reasons discussed, the protest is overruled.

STATUTES INVOLVED

Classified under:

Paragraph 397 of the Tariff Act of 1930, as modified by T.D. 54108:

> Articles or wares, not specially provided for, whether partly or wholly manufactured:
>
> * * * * * * *
>
> Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:
>
> * * * * * * *
>
> Not wholly or in chief value of tin or tin plate:
>
> * * * * * * *
>
> Other * * * _____ 19% ad val.

Claimed under:

Paragraph 1604 of the Tariff Act of 1930:

> Agricultural implements: * * * wagons and carts, * * * and all other agricultural implements of any kind or description, not specially provided for, whether in whole or in parts, including repair parts: *Provided*, That no article specified by name in Title I shall be free of duty under this paragraph.

Paragraph 353 of the Tariff Act of 1930, as modified by T.D. 55615, T.D. 55649, and T.D. 55816:

> Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, all the foregoing and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for:
>
> * * * * * * *
>
> Other (except * * *) _____ 12½% ad val.

Paragraph 372 of the Tariff Act of 1930, as modified by T.D. 55615, T.D. 55649 and T.D. 55816:

> Machines, finished or unfinished, not specially provided for:
>
> * * * * * * *
>
> Other (except * * *) _____ 10½% ad val.

THE RECORD

The imported trailers were used for transporting horses or other livestock over the public highways. The models in issue could accommodate two horses or several smaller animals. These trailers were not self-propelled, but rather were attached to the rear of towing vehicles.

A seven-plug connection transmits electricity from the towing vehicle to the trailers. Such electrical connection was made between the towing vehicle and the trailers by plugging a male electrical "plug" located on the trailers into a female electrical "plug" on the towing vehicle, thus transferring electrical power from the towing vehicle to the trailers. The female and the male electrical plugs each contained, in turn, seven plugs (or connections), which operate as follows:

The number one plug carries electricity to the right directional signal at the rear of the trailers so that the driver of the vehicle can indicate his intention to turn. It also carries the current to the same lamp which functions as a stop signal when the driver operates the brake pedal. The number five plug has the same dual function for the left directional and stop signal at the rear of the trailers.

The number two plug provides for the flow of electricity to the interior light which is operated by a switch in the trailers. That light is used when loading or unloading, and when animals are being hauled at night if they show a tendency to be nervous.

The number three plug is used with the Beaufort Double trailer and not with the Farmers Hunt trailer. This plug connects the horn on the towing vehicle with a button in the trailer. When the button is pressed by someone in the trailer, the horn of the towing vehicle will sound, thereby signalling the driver.

The number four plug connects with the two taillights on the back of the trailers, so that when the lights of the towing vehicle are turned on, the taillights on the trailers will also operate. The bottom of the left rear taillight is white and illuminates the license plate.

The number six plug services the running lights, viz. the two amber lights on the sides of the trailers and the two red lights on the rear of the trailers. On the Beaufort Double trailer there are also two amber lights on the front top of the trailer.

The number seven plug is the electrical ground wire.

The directional lights, stoplights, taillights, license illumination light, and running lights on the trailers are all operated from the driver's seat of the towing vehicle.

The trailers are equipped with a surge brake which is operated mechanically. As the brakes are applied on the towing vehicle, the vehicle comes to a stop. The weight of the trailers bearing against a shaft

within the towing hitch presses against a spring which in turn, forces a lever back on the trailers applying brakes to them by pulling cables attached to the brake shoes of all four wheels.

## Agricultural implements

Initially we shall consider plaintiff's claim under paragraph 1604.

While the issue of whether horse or livestock trailers are free of duty under paragraph 1604 has never been considered by the courts, so far as we have been able to determine, there have been many prior decisions construing the term "agricultural implements."

A frequently cited case is *United States* v. *Boker & Co.*, 6 Ct. Cust. Appls. 243, T.D. 35472 (1915), which arose under the Tariff Act of 1913. In *Boker*, the court of appeals commented (*id.* at 244–245) :

> While, therefore, "agriculture" in its broad application may extend into and include elements of horticulture, viticulture, arbor culture, and other *allied* industries and pursuits, in its primary significance it extends to and embraces only those parts of all such as pertain to human and incidental animal subsistence—the substantial requirements of life (food) and possibly man's comfort (raiment), and not the merely pleasurable pursuits; the necessities and not the essentially pleasurable or ornamental. [Italics quoted.]
>
> The language of paragraph 391 illustrates and confirms this view. Thus while "wagons and carts" are within the paragraph— such as are used in the cultivation and removal of the crops by the farmer—certainly those words would not include buggies or automobiles—pleasure vehicles—nor would they extend to the wagon or cart of the contractor entirely unused upon the farm. There is no implement enumerated within the paragraph that is not devoted to the production of food or raiment for man, and there is none so enumerated that is employed in his other pursuits.

It is well established that paragraph 1604 is a use provision, thus requiring evidence of chief use throughout the United States. *United States* v. *Spreckels Creameries, Inc.*, 17 CCPA 400, T.D. 43835 (1930) ; *J. M. Altieri* v. *United States*, 63 Cust. Ct. 261, C.D. 3906 (1969), and cases cited therein. The burden, therefore, was cast upon plaintiff to establish that the imported trailers were chiefly used throughout the United States for agricultural purposes. In this connection, plaintiff relies upon a line of decisions which, it contends, establishes that "the raising of livestock is an agricultural pursuit, and that the equipment and implements used for this work are agricultural implements." From these decisions, plaintiff argues that the trailers are classifiable as agricultural implements under paragraph 1604 since the intended and actual use of the trailers was for the transportation of livestock "and sometimes farm equipment."

We disagree. This court does not feel that plaintiff's claim should be sustained on a mere showing that the trailers were used to transport horses and livestock over the public highways.

In *Spreckels*, cans used for the transportation of milk were not shown to be chiefly used as agricultural implements. The appellate court there held that the evidence was insufficient to establish that the chief use of the cans was on farms or by farmers, "nor is it sufficient even to show that chief use is for transportation by cooperative creamery organizations composed of farmers" (*id.* at 404).

And in *United States* v. *S. S. Perry*, 25 CCPA 282, T.D. 49395 (1938), the appellate court held that celluloid leg bands of various colors applied by poultrymen to the legs of chickens for identification purposes were agricultural implements under paragraph 1604.

In *Inter-Maritime Forwarding Co., Inc.* v. *United States*, 45 CCPA 125, C.A.D. 685 (1958), the appellate court held that "Chixexers" used in making internal optical inspection of chicks to ascertain their sex were agricultural implements where such instruments were used by commercial hatcheries, by those who raise poultry in conjunction with other agricultural pursuits, and by specialists or experts employed on a contract basis, and where those instruments served a purpose in the successful and efficient raising of poultry.

In the other cases relied upon by plaintiff for the proposition that equipment and implements used in connection with raising of livestock should be considered agricultural implements, the record led the court to conclude that the particular importations were chiefly used by farmers, ranchers, hatcheries, or by others engaged in agricultural pursuits. See *Inter Maritime Fwdg. Co., Inc.* v. *United States*, 59 Cust. Ct. 412, C.D. 3177 (1967); *Sunbeam Corporation* v. *United States*, 53 Cust. Ct. 126, C.D. 2483 (1964); *C. F. Liebert, et al.* v. *United States*, 43 Cust. Ct. 366, Abs. 63423 (1959); *Samuel Shapiro & Co. et al.* v. *United States*, 8 Cust. Ct. 81, C.D. 582 (1942); *California Wool Growers Association* v. *United States*, 60 Treas. Dec. 941, T.D. 45291 (1931).

By contrast, the record in the present case is devoid of evidence that the trailers were chiefly used throughout the United States in connection with the raising of livestock by farmers or ranchers. Indeed, it is entirely possible that the imported trailers were chiefly used by non-farmers for transporting horses to tracks, shows, or for other non-agricultural pursuits. Inasmuch as the trailers were classified by the Government under paragraph 397, it is of course presumed that their chief use was non-agricultural. Plaintiff has failed to prove otherwise, and hence its claim under paragraph 1604 is overruled.

### Articles having essential electrical feature

We now turn to plaintiff's alternative claim under paragraph 353. The imported trailers had certain electrical features, such as stop lights, directional signals, etc., which undoubtedly contributed to the safe operation of the trailers on the highways and were required by law for reasons of safety. However, in our opinion, such safety features do not bring the imports within the purview of paragraph 353, as articles having as an essential feature an electrical element or device.

Several decisions of this court have held that certain articles were not within the purview of paragraph 353, notwithstanding the presence of electrically operated safety features. See *Elser Elevator Company* v. *United States*, 58 Cust. Ct. 432, C.D. 3009 (1967) (escalators); *Brown Boveri Corp. et al.* v. *United States*, 58 Cust. Ct. 131, C.D. 2905 (1967) (compressor); *R. J. Saunders Co., Inc.* v. *United States*, 47 Cust. Ct. 319, Abstract 66095 (1961) (liquid air engines). Following the principle of these cases, we have concluded that the trailers are not within the purview of the third subdivision of paragraph 353.

Further, we have noted that in *John A. Steer & Co.* v. *United States*, 24 CCPA 293, T.D. 48737 (1936), the appellate court held that an electrical heating apparatus in an anhydrous ammonia plant did not make it an electrical machine. The court commented (*id.* at 299–300):

> * * * The particular devices which are named in the statute as exemplars, are devices which are operated electrically, and which are able to function because of their electrical elements. That is true only in a very small degree in the case of an anhydrous ammonia plant, such as the one here imported. The continuance of its operation does not at all depend upon an electrical element. It has, it is true, an electrical heating element by which the synthesis of the gases is inaugurated, but so, to the same extent, does a gasoline automobile which has its electrical starting device, or an oil burner for a furnace which has its spark plug to start ignition. Yet we dare say no one would seriously contend that such devices should be classified within paragraph 353, even though there were no specific provisions for automobiles or oil burners within the tariff act. Such devices would still be gasoline automobiles and oil furnaces. In other words, they would not be electric machines, and the articles, to be classified under the third subdivision of said paragraph 353, are, as we said in the *Dryden Rubber Co.* case, *supra*, required to be electric machines; that is, machines where the essential operating power of the device is electricity.

We think that the rationale of the *Steer* case is applicable here. See also *Norman G. Jensen, Waverly Sugar Company* v. *United States*. 25 Cust. Ct. 27, C.D. 1258 (1950).

Plaintiff relies upon several cases, wherein certain devices were found to be parts of automobiles.[2] Inasmuch as the issue herein is not whether the electrical devices on the trailers are "parts" thereof, we do not regard the "parts" cases cited by plaintiff as apposite.

Plaintiff's claim under paragraph 353 is overruled.

## Machines not specially provided for

Finally, we shall deal with plaintiff's claim that the trailers are classifiable as "machines" under paragraph 372. In support of that claim, plaintiff relies heavily upon the fact that the trailers utilized a mechanically operated "surge brake." Assuming *arguendo* that such brake standing alone constitutes a "machine," it is our opinion that the trailers, when considered as a whole, are not within the meaning of "machine" in paragraph 372. We are persuaded to this view by a line of decisions cited by defendant: *United States* v. *Adler-Jones Co.*, 20 CCPA 397, T.D. 46231 (1933); *Thorens, Inc.* v. *United States*, 31 CCPA 125, C.A.D. 261 (1943); *F. B. Vandegrift & Co., Inc.* v. *United States*, 54 CCPA 69, C.A.D. 908 (1967).

In *Adler-Jones*, the appellate court held that a figure in the nature of a manikin, with a concealed mechanism which caused the body and head to swing or rock back and forth, was not classifiable as a machine under paragraph 372. The court commented (*id.* at 399):

> The mechanical device which causes the swinging or rocking of the body and head is but a small part of the figure and affects only a portion thereof. The article, we think, must be considered as a whole, no language of the tariff act being found which suggests any other method of treatment.
>
> When so considered we do not think the figure meets the definition of "machine" as that term is commonly and commercially used and understood and as it was applied in the *Simon, Buhler & Baumann* case, *supra*.

Similarly, in *Thorens, Inc.* the appellate court held that toilet paper distributors or roll holders, consisting in part of a music-box mechanism which played a tune when the roll was operated, were not "machines" under paragraph 372. The court rejected appellant's attempt to distinguish *Adler-Jones* on the basis that in the latter case the court had mentioned that the mechanism formed a small part of the article, while in *Thorens* the music-box feature constituted a large part of the article. In *Thorens*, the appellate court stated that the "important point" of its decision in *Adler-Jones* was that the article must be considered as a whole, and when so considered it did

---

[2] *S. Wagner & Co., v. United States*, 44 Cust. Ct. 424, Abstract 64079 (1960); *Gamble Vargish & Co. DBA Seabury & Co. and American Express Co. v. United States*, 44 Cust. Ct. 394, Abstract 63984 (1960); *United States* v. *Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569, T.D. 41434 (1926).

not meet the definition of a machine as that term is commonly used and understood.

. In *Vandegrift*, the appellate court, citing *Adler-Jones* and *Thorens*, held that a miniature artificial Christmas tree which revolved upon a base containing a music-box mechanism was not a "machine." Furthermore that court agreed with our conclusion to the effect that the revolving Christmas trees, when considered as a whole, were not within the meaning of "machine" as that term is used in paragraph 372.

We agree with defendant that the principle of law applied by our appellate court in *Adler-Jones*, *Thorens*, and *Vandegrift*, all of which involved articles consisting in part of a mechanical device, is applicable to the facts in this case. Accordingly, it follows that even if the surge brake itself should be regarded as a "machine," [3] the trailers must nevertheless be considered as a whole for the purposes of determining the applicability of paragraph 372. When so considered, we have concluded that the trailers are not "machines."

Although not a controlling factor, there is no evidence whatever in the record to establish that these horse or livestock trailers are commercially bought or sold as "machines," or are commonly so regarded. Cf. *Morris Friedman* v. *United States*, 57 CCPA 92, C.A.D. 983 (1970) ; *Trans Atlantic Co.* v. *United States*, 54 CCPA 75, C.A.D. 909 (1967) ; *United States* v. *IDL Mfg. & Sales Corp.*, 48 CCPA 17, C.A.D. 756 (1960).

For the reasons stated, plaintiff's claim under paragraph 372 is overruled.

### Conclusion

Inasmuch as plaintiff has failed to establish the correctness of any of its alternative claims, the protest is overruled, and judgment will issue accordingly.

(C.D. 4168)

T. D. Downing Co. *v.* United States

---

[3] In *F. B. Vandegrift & Co., Inc.* v. *United States*, 56 Cust. Ct. 502, C.D. 2688 (1966), *aff'd*, 54 CCPA 69, C.A.D. 908 (1967), this court held that although the music-box component of the revolving Christmas trees must be deemed to be a machine, the articles considered as a whole were "more than" machines. Also, in *Victoria Distributors, Inc.* v. *United States*, 56 Cust. Ct. 284, 296, C.D. 2639 (1966), the court stated: "An article may embody a machine without being a machine itself."