BEFORE THE SECOND DIVISION, JANUARY 13, 1964

No. 68234.—Frank P. Dow Co., Inc., and Evergreen Distributors, Inc. *v.* United States, protest 61/4839 (San Francisco).

Ford, Judge: An importation, described on the invoice as "One-VGS 471 Wehrhahn Gangsaw; One-Jansen Saw Tensioner; One-Key for eccentric buckles; 36 Pair of eccentric insertion buckles," was classified by the collector of customs within the purview of paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as articles having as an essential feature an electrical element or device, who assessed duty thereon at the rate of 13¾ per centum ad valorem.

It is the claim of plaintiffs herein that the importation should properly have been classified as machines, finished or unfinished, not specially provided for, pursuant to paragraph 372 of said act, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, for which duty at the rate of 11½ per centum ad valorem is provided.

The pertinent portions of the provisions involved herein are as follows:

Paragraph 353 of the Tariff Act of 1930, as modified by T.D. 52739, *supra:*

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\* \* \* \* \* \* \*

Other \* \* \*\_\_\_\_ 13¾% ad val.

Paragraph 372 of the Tariff Act of 1930, as modified by T.D. 54108, *supra:*

Machines, finished or unfinished, not specially provided for:

\* \* \* \* \* \* \*

Other \* \* \*\_\_\_\_ 11½% ad val.

The record herein consists of the testimony of one witness called on behalf of plaintiff and the receipt of four exhibits. Plaintiffs' exhibit 1 consists of a folder depicting the imported article; plaintiffs' exhibits 2, 3, and 4 consist of photographs of similar gangsaws. In addition thereto, counsel for the respective parties have stipulated that the merchandise at issue is a mechanical contrivance which modifies, transfers, or utilizes force or energy.

The president of Evergreen Distributors, the actual importer herein, Eugene S. Ridgway, testified that he formed Evergreen Distributors in 1955, the business of which is selling, designing and building sawmills, and importing the machinery; that he is familiar with the merchandise involved herein, having purchased it and installed it in mills; that exhibit 1 is a gangsaw which utilizes air pressure for raising and lowering the press rolls or lathes; that there are similar gangsaws which utilize hydraulic pressure for the same purpose; that exhibit 1 uses electric motors; that the machine is set on a concrete foundation and the source of power can be a diesel engine, a gasoline engine, or an electric motor; that the power is delivered to the machine by a V-belt pulley, which is marked with an "X" on exhibits 1 and 3; that the power is delivered to the V-belt by another series of belts to the center pulley.

The witness then testified that the machine depicted in exhibit 2 is run by belts and the prime source of power is a diesel engine, while the machine depicted in exhibit 3 has for its prime source of power an electric motor; that, based on his experience, the cost of operation by diesel engine, as compared with an electric motor, would be double; that a diesel engine is used in that installation, because there is no electric power source; that, in exhibit 2, there is no "electric motor driven automatic pressure lubricator," such as is included in exhibit 1, but the lubrication is accomplished by a ratchet arm, which is depicted on exhibit 4 and marked "Z"; that the portion of exhibit 2, marked "A," is a

hydraulic pump which furnishes the source of power to raise and lower the rolls of the gangsaw; that exhibit 1, which utilizes air pressure for this purpose, uses whatever source of power happens to be running the mill; that there are steam-driven air compressors and electric air compressors; that, in utilizing a source of power other than electricity to drive the wheel marked "X," no alteration is necessary; that supplying air pressure by steam rather than electricity does not require any alteration.

On cross-examination, the witness admitted that the items described on the invoice as "1 motor with console for saw projection," "1 oil pump with conduit and motor," and "Fully automatic overhang electric motor control," described on exhibit 1, all contain electric motors; that the item described as "1 Switchboard" contains three air valves and is not electrically operated; that, in his opinion, the motors imported are not essential, since the imported machine was never installed and may be sent to Mexico, in which event a diesel engine will power the saw. Mr. Ridgway further testified that photographic exhibits 2, 3, and 4 are not of the imported machine, but of a similar machine; that the other machines do not have the automatic overhang with electric motor control, an electric motor-driven automatic pressure lubricator, nor a motor with motor console for saw projection; that exhibit 2 has four cylinders, while the imported machine, exhibit 1, has two cylinders.

On redirect examination, the witness testified that the pump, marked "P," lubricates the guides; that the ratchet arm, marked "Z" on exhibit 4, serves the same purpose; that the automatic overhang, marked "Y" on exhibit 1, is not found on exhibit 2 and, in place thereof, the saws are dipped forward in the frame.

There has been much litigation since the passage of the Tariff Act of 1930 involving the interpretation and application of the phrase "articles having as an essential feature an electrical element or device," which appears in paragraph 353, *supra*. A case which has been frequently cited in connection with this language is *United States* v. *Dryden Rubber Co.*, 22 CCPA 51, T.D. 47050, wherein the court provided a set of inquiries which must be made in determining if an article falls within the language, "articles having as an essential feature an electrical element or device," provided for in paragraph 353, *supra*. These inquiries were set forth as follows:

There are two inquiries, therefore, when the question of the classifiability of an article under this division of the paragraph is under consideration: First, is it essentially an electrical article? The electrical feature must be an essential feature, without which the article will not function, normally, for the purposes intended, for, it must be manifest, that if it be not an electrical article, it does not come within the division at all. Second, if it is such an electrical article, is it an article named in the language, or within the class of articles named in this paragraph?

From what has been said, it follows that if the article, when it is imported, is designed and constructed to use electrical power, or other power, interchangeably, then it has not, as an essential feature, an electrical element or device.

Where such an article can utilize electrical power or other power interchangeably, the question of whether any modification of the machine *per se* is necessary to accomplish this must be considered. In the event that substantial modification or reconstruction is necessary, said machine, if electrically operated, would remain within the purview of paragraph 353, as modified.

The record herein establishes that there are at least two functions of the imported unit which utilize electricity. The record also establishes that the prime source which delivers the power to the machine by means of V-belts, in the instant machine, was run by electricity. The record and the packing list

do not clearly indicate whether the prime source of power, the electric motor, was imported.

The evidence does establish that the prime source of power may be an electric motor, a diesel engine, or a steam engine and that merely connecting the V-belts to any of these sources of power would enable power to be delivered to the machine without any modification of the machine *per se.*

Under the above test in the *Dryden* case and following a similar situation as was involved in *United States* v. *Baker Perkins, Inc., et al.,* 46 CCPA 128, C.A.D. 714, the machine involved herein is not one which fits within the purview of "articles having as an essential feature an electrical element or device," since the prime source of power is interchangeable without substantial modification.

The other two functions which require electricity are the electric motor-driven automatic pressure lubricator and the fully automatic overhang electric motor control. The first item, based upon the record, is driven by an electrical motor which automatically lubricates the guides of the saw. The witness has testified that, in lieu of the electric motor-driven automatic pressure lubricator, a ratchet is used, such as in a machine of the type depicted in exhibit 2, the ratchet itself being marked "Z" on exhibit 4.

The record establishes that "exhibit 2" did not have to be altered, because they could not use an electric motor for the automatic pressure lubricator. This evidence, it is to be noted, relates to exhibit 2, a diesel-driven gangsaw, which obviously had the ratchet for lubrication incorporated within the gangsaw. While it may be true that a ratchet may be used for automatic lubrication, such as in exhibit 2, there is no evidence that a machine, such as is involved herein, designed and imported with an electric motor for automatic lubrication, can be converted to use a ratchet, without substantial modification or reconstruction of the functional properties of the machine. Accordingly, this electrical feature alone brings the imported gangsaw within the purview of "articles having as an essential feature an electrical element or device" under paragraph 353, *supra.*

The other electrically operated feature of the imported machine is the automatic overhang control. Based upon the record, it would appear that, in place of this electrically operated feature, "The saws are dipped forward in the frame of the machine." What the necessary modification to the machine to accomplish this might be, is not of record. Accordingly, in view of the lack of evidence indicating what modification is necessary to accomplish the change, this electrical feature also brings the imported merchandise within the purview of paragraph 353, as modified, *supra.*

In view of the foregoing, the protest is overruled.

Judgment will be rendered accordingly.