No. 69205.—Soderhamn Machine Mfg. Co. *v.* United States, protest 61/12394 (Tampa).

FORD, Judge: The merchandise at issue was invoiced as "3 only CAMBIO 66 Debarkers according to American 190.496 standard." The involved merchandise was classified by the collector as parts, not specially provided for, of articles

having as an essential feature an electrical element or device, and assessed at 13¾ per centum ad valorem under the provisions of paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739.

Plaintiff contends that said merchandise is properly dutiable at 11½ per centum ad valorem under the provisions of paragraph 372 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as machines and parts, not specially provided for. Claims for all other merchandise similarly assessed have been abandoned.

The pertinent portions of the statutes involved herein read as follows:

Paragraph 353 of the Tariff Act of 1930, as modified by T.D. 52739, *supra*:

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Other * * * _____ 13¾% ad val.

Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided ·for in any item 353 of this Part (not including X-ray tubes or parts thereof) _____ The same rate of duty as the articles of which they are parts.

Paragraph 372 of the Tariff Act of 1930, as modified by T.D. 54108, *supra:*

Machines, finished or unfinished, not specially provided for:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Other * * *. 11½% ad val.

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part. The rate for the article of which they are parts.

The record herein consists of the testimony of one witness called on behalf of plaintiff and three exhibits received on behalf of plaintiff and one exhibit received on behalf of defendant. There appears to be no question that the imported merchandise, in its condition as imported, contained no electrical elements or devices, such as switches, wiring, motors, lights, or anything of an electrical nature. In fact, the imported merchandise did not contain a lubricant retaining ring, debarking tools, debarking tool shafts, or numerous other items which were assembled in the United States for the completion of the machine, for use as a debarking machine. The debarking machine is designed to remove bark from a log as it is passed laterally through the machine. This is accomplished by sharp cutting tools which press against the log and, with the assistance of friction and lateral force, all the bark is removed from the log. The figure 66 is a millimeter measurement of the diameter of the hole of the revolving ring, which represents 26 inches. Accordingly, a machine having a ring of 66 millimeters will accept logs up to 26 inches in diameter. There are other sizes of Cambio debarkers, such as 21 inches, 14 inches, 8 inches, 35 inches, 50 inches, and 60 inches, and the record shows that, aside from the size of the hole, the mechanical differences between the machines are minor; all of the machines work on the same principle.

The method of transmitting power to the machine is by a poly-V belt. Ordinarily, electric motors bolted to the housing of the machine are utilized to transmit the power through the V belt. However, a 14-inch Cambio debarker used for demonstration purposes, a photograph of which was marked plaintiff's illustrative exhibit 2, depicts said machine driven by an internal combustion engine which transmits power by a V belt. The witness testified that no modifications to the basic machine were required in order to utilize the internal combustion engine. Exhibit 3 is a blueprint depicting a 21-inch model which was to be driven by a belt and power takeoff of a tractor.

While, on cross-examination, the witness admitted that he had never modified a Cambio 66 debarker which is used in sawmills and pulpmills, he stated there would be no changes to the basic machine with the modification of the power supply.

Based upon the record herein, it would appear that there is a striking similarity between the condition of the imported merchandise and that involved in *United States* v. *Baker Perkins, Inc., et al.*, 46 CCPA 128, C.A.D. 714. In the *Baker Perkins* case, *supra*, a cocoa liquor grinding mill, imported without any prime mover for power but which it was admitted utilized electric motors for power, which power was transmitted by means of a V belt, was held to be properly classifiable as a machine under paragraph 372 of the Tariff Act of 1930.

The court therein, in arriving at this conclusion, stated that the contemplation of the use of electric power is insufficient to constitute an article as one having as an essential feature an electrical element or device under paragraph 353, as modified.

In the *Baker Perkins* case, *supra*, the court further concluded as follows:

* * * In this day and age the water wheel and steam engine have passed from the commercial scene insofar as the operation of factory machine tools is concerned. One need not look far to discover that almost every machine in a factory is operated by an electric motor as a practical commercial matter. If this fact is to be taken into consideration in construing paragraph 353 then the humblest wood-turning lathe and every other device having a pulley or sprocket on it for the attachment of a drive belt or a chain is going to become an "article having as an essential feature an electrical element or device" because, practically, it is going to be operated by electrical motive power if it is operated at all.

A case most frequently cited in connection with the language contained in paragraph 353 of the Tariff Act of 1930, as modified *supra*, is *United States* v. *Dryden Rubber Co.*, 22 CCPA 51, T.D. 47050, wherein the court provided a set of inquiries which must be made in determining whether an article falls within the language "Articles having as an essential feature an electrical element or device," as provided for in paragraph 353, *supra*. These inquiries were set forth as follows:

There are two inquiries, therefore, when the question of the classifiability of an article under this division of the paragraph is under consideration: First, is it essentially an electrical article? The electrical feature must be an essential feature, without which the article will not function, normally, for the purposes intended, for, it must be manifest, that if it be not an electrical article, it does not come within the division at all. Second, if it is such an electrical article, is it an article named in the language, or within the class of articles named in this paragraph?

From what has been said, it follows that if the article, when it is imported, is designed and constructed to use electrical power, or other power, interchangeably, then it has not, as an essential feature, an electrical element or device.

In the decision in the case of *Frank P. Dow Co., Inc., and Evergreen Distributors, Inc.* v. *United States*, 52 Cust. Ct. 235, Abstract 68234, involving certain gangsaws, the following statement was made:

Where such an article can utilize electrical power or other power interchangeably, the question of whether any modification of the machine *per se* is necessary to accomplish this must be considered. In the event that substantial modification or reconstruction is necessary, said machine if electrically operated, would remain within the purview of paragraph 353, as modified.

The record establishes to our satisfaction that the imported merchandise, when fully assembled into a machine, receives its source of power by means of a V belt. The record, accordingly, establishes that the imported merchandise is not essentially an electrical article, since electrical power or other power may be used interchangeably without a modification of the machine *per se*. We, therefore, find that the imported merchandise consists of machines, unfinished, not specially provided for, "Other," or parts thereof, and, as such, dutiable at the rate of 11½ per centum ad valorem, as claimed by plaintiff herein.

Judgment will be entered accordingly.