(C.D. 2610)

F. B. VANDEGRIFT & CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 11, 1966)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff. *John W. Douglas*, Assistant Attorney General (*Richard J. Kaplan*, trial attorney), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: The imported merchandise involved under protest 58/7790, entry No. 18863, consists of five Willmes pressers, model 2300/100 S, which are machines designed to extract juice from fruits. Each presser was imported equipped with two electric motors. They were classified under paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as articles having as an essential feature an electrical element or device, dutiable at 13¾ per centum ad valorem.

The plaintiff claims classification at 13 per centum ad valorem under paragraph 372 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as machines, not specially provided for; or, by amendment to the protest at the trial, that the motors imported with the pressers should have been made separately dutiable at 11½ per centum ad valorem under paragraph 353 of said act, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as electric motors of more than one-tenth horsepower, but less than 200 horsepower.

The imported merchandise involved under protest 62/8055, entry 17728, is one apple peeling machine, which was classified under paragraph 353 of the Tariff Act of 1930, as modified by T.D. 52739, *supra*, as an article having as an essential feature an electrical element or device, dutiable at 13¾ per centum ad valorem. Plaintiff claims, in its protest, that the apple peeling machine should be dutiable at 11½ per centum ad valorem, as a machine, not specially provided for, under paragraph 372 of said act, as modified by T.D. 54108, *supra*, and that the imported motor should be separately dutiable at 10½ per centum ad valorem under paragraph 353, as modified by T.D. 54108, *supra*.

The claims concerning the apple peeling machine are at some variance, in that plaintiff claims separate classification for the motor attached thereon. The commercial invoice uses the words "komplett, mit Motor," whereas the testimony of the plaintiff's witness in the record, repeated a number of times, is quite specific that the apple peeler was imported without a motor.

The two protests covering the two kinds of imported machines, *supra*, the peelers and the pressers, are alleged as involving the same issue.

Paragraph 353 of the Tariff Act of 1930, as modified by T.D. 52739, *supra*, under which the imported merchandise was classified, reads, in part, as follows:

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Other (* * *) _____ 13¾% ad val.

Paragraph 372 of the Tariff Act of 1930, as modified by T.D. 54108, *supra*, under which plaintiff claims classification for the imported machines, reads, in part, as follows:

Machines, finished or unfinished, not specially provided for:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Other (* * *) _____ 13% ad val.
 [From June 30, 1956,
 to June 29, 1957.]
 [11½% ad val. on
 or after June 30, 1958.]

Paragraph 353 of the Tariff Act of 1930, as modified by T.D. 54108, *supra*, under which plaintiff claims classification for the imported motors, reads, in part, as follows:

Articles having as an essential feature an
electrical element or device, such as elec-
tric motors, fans, locomotives, portable
tools, furnaces, heaters, ovens, ranges,
washing machines, refrigerators, and
signs, finished or unfinished, wholly or in
chief value of metal, and not specially
provided for:

 * * * * * * *

 Motors:
 Of more than $\frac{1}{10}$ horsepower
 but less than 200 horsepower_____ 11½% ad val.
 [From June 30, 1956,
 to June 29, 1957.]
 [10½% ad val.
 on or after June 30,
 1958.]
 Other_____ 12½% ad val.

The issue is whether the imported pressers and the apple peeler are articles which have as an essential feature an electrical element or device within the purview of paragraph 353, as modified, *supra*, as assessed.

The record herein is comprised of the testimony of one witness and three exhibits for the plaintiff, exhibit 1 is a translation from German to English of the invoice for the five Willmes pressers; exhibit 2 is a catalog, illustrating the Willmes presser; illustrative exhibit 3 is a catalog page, with translation attached, illustrating the apple peeler.

At the opening of the trial, it was stipulated between counsel for the respective parties that if the court should hold the imported items not classifiable under paragraph 353, as modified, as having essential electrical elements, then said items conform with the expression "machines," as used in the tariff act, and that they utilize, modify, and apply energy and force, and transmit motion.

Mr. Hubert F. Stollenwerk testified for the plaintiff substantially as follows: That he does sales and service work for Hubert C. Stollenwerk, Inc., importer and seller of wine and fruit machinery; that he sells the machines, starts, and keeps them running for the customer; that he has been with the company since 1958 and became familiar with the merchandise herein through selling and servicing and through study and the instruction received from the president of the company; that he has been trained in machinery and toolmaking, took a 4-year

apprenticeship with the Budd Co. in Philadelphia, from which he has a tool and diemaking diploma. He identified a catalog (exhibit 2), illustrating the Willmes presser herein, and described its construction and its operation. He stated that the Willmes presser has two electric motors (marked "A" and "B" on exhibit 2) bolted thereon; that motor "A" transmits power by means of a chain and sprockets to the apparatus; that motor "B" turns the conveyor through a clutch assembly, which moves the pomace out of the pan. Quoting the witness—

A. Willmes Presser is a perforated stainless steel drum with a rubber sleeve running down the center of it. You open the drum by means of six doors in line, fill the grapes or apple mash into the drum, close the door, and inflate the rubber sleeve. This rubber sleeve acts like a rubber tube in a car tire. It squeezes the juice through the drum down to the collecting pan.

Q. And, how do you get the juice away from the apparatus?—A. There is an outlet at the bottom of the pan, a two-inch outlet whereby the processor can thread in a hose and hook up a pump to that and pump the juice away.

 * * * * * * *

Q. How do you extract the pulp or the mash out of this machine, after you have extracted the juice?—A. We remove the doors of the drum and rotate the drum so that the pomace will break away from the cage and fall into the conveyor pan underneath the machine.

The witness verified that each motor ("A" and "B," illustrated in exhibit 2) is connected to the apparatus by four bolts. He stated that there were no other electrical features on the Willmes presser, and that, in his opinion, the electric motors are not essential for its operation, explaining that electric motors can be replaced either by gasoline motors, or a common shaft driven by steam or by water; to do this, electric motor "A" could be removed by taking out the four bolts and uncoupling the chain, removing the sprocket on the motor shaft, and replacing it on any other kind of a motor driven shaft. This, the witness stated, would take approximately an hour. To replace motor "B," he continued, likewise would entail removal of the four bolts, removing the shaft of the clutch from the motor shaft, and replacing it on another shaft, which he stated would take "another hour, approximately." He explained that motors "A" and "B" are typical gear head motors, which may be used separately and independently of the apparatus; that motor "A" is 4 horsepower and motor "B" 1½ horsepower.

On cross-examination, he stated that he had seen or worked with approximately 75 of these pressers; all were operated electrically and he never saw one operated other than by electric motor.

The witness identified plaintiff's illustrative exhibit 3 (same being one page in a foreign language, referred to herein as a catalog, at-

tached to which is an English translation), furnishing two photographs and the functioning method of the apple peeler. The witness was not asked to testify concerning the detailed operation of this machine, but from the translated description of illustrative exhibit 3, we note briefly that it can peel 30 fresh apples per minute automatically and separate the core from the apple by means of stainless steel knives and parts. The last sentence of the said translation tells us:

* * * The machine can be delivered with attached electric motor, Type SM, as well as with a pulley for transmission, Type S.

The witness testified that the apple peeler herein was a type S and was imported without a motor. Reiterating the absence of the motor the witness responded:

A. The type that we have imported does not have a motor. That is the S. S.M. designates that it has a motor on it and S. does not.

Q. Looking at the invoice before the Court, as imported, did that come in with or without a motor?—A. Without a motor. It has a coupling for a motor.

Q. But not the motor itself?—A. It did not have the motor.

Q. Now, in order to use this apparatus, is it necessary to use an electric motor?—A. No.

The witness explained that, in its original makeup, the machine was hand driven with a handcrank; that there are several gears on the back where, in place of the handcrank, they may put a motor, not necessarily an electric motor, but any type of motor; that there were no other electrical features on the apple peeler before the court.

The witness stated that he could not tell the proper size of motor for the apple peeler, but that actually one-third horsepower was "too big." He stated they imported only this one apple peeler to date, an electric motor being put on after the apple peeler arrived here. There is a plate where a motor could be mounted, but there are no holes bored for that. He stated that the condition in which the machine was imported made it readily adaptable to use with an electric motor, and it was so adapted after it was imported. He added, however, that the machine was adapted to use with any type of motor, not just electric, although, in the instant case, both the pressers and the apple peeler were put to use with electric motors for the sake of convenience and since electricity is a cheaper mode of operation. The witness concluded by stating that he saw and worked with the five pressers here under protest and personally knows their functions, features, and how they operate.

Counsel for defendant has cited *Frank P. Dow Co., Inc., and Evergreen Distributors, Inc.* v. *United States*, 52 Cust. Ct. 235, Abstract 68234, in which case we find cited further leading authorities pertinent

to the case at bar. Counsel for plaintiff cites, among other cases, *Keer, Maurer Company* v. *United States*, 48 Cust. Ct. 205, C.D. 2336, on the same subject. These cases afford facts and established guidelines applicable to the imported machines before us, on the question of essential electric features within the purview of paragraph 353, *supra*.

In the *Frank P. Dow Co., Inc.,* case, *supra*, reference is made to a case frequently cited on the subject before us, *United States* v. *Dryden Rubber Co.*, 22 CCPA 51, T.D. 47050, which provides us with the following pertinent language:

> * * * a set of inquiries which must be made in determining if an article falls within the language, "articles having as an essential feature an electrical element or device," provided for in paragraph 353, *supra*. These inquiries were set forth as follows:

>> There are two inquiries, therefore, when the question of the classifiability of an article under this division of the paragraph is under consideration: First, is it essentially an electrical article? The electrical feature must be an essential feature, without which the article will not function, normally, for the purposes intended, for, it must be manifest, that if it be not an electrical article, it does not come within the division at all. Second, if it is such an electrical article, is it an article named in the language, or within the class of articles named in this paragraph?

>> From what has been said, it follows that if the article, when it is imported, is designed and constructed to use electrical power, or other power, interchangeably, then it has not, as an essential feature, an electrical element or device.

Where such an article can utilize electrical power or other power interchangeably, the question of whether any modification of the machine *per se* is necessary to accomplish this must be considered. In the event that substantial modification or reconstruction is necessary, said machine, if electrically operated, would remain within the purview of paragraph 353, as modified.

The foregoing represents a reliable standard for application to the facts in cases in this category, including the case at bar. See also *Ralph C. Coxhead Corp.* v. *United States*, 22 CCPA 96, T.D. 47080; *W. C. Sullivan & Company* v. *United States*, 46 Cust. Ct. 31, C.D. 2229.

In *United States* v. *Baker Perkins, Inc., R. F. Downing Co., Inc.,* 46 CCPA 128, C.A.D. 714, the merchandise was a cocoa liquor grinding mill intended to employ an electric motor to power the machine, that being regarded as the most practical and commercially economical mode of operation. The court held that, since it was shown that the mill could be operated by other than electrical power, selection of an electric motor did not make the grinding mill an essentially electrical article. See also *United States* v. *J. E. Bernard & Co., Inc.*, 30 CCPA 213, C.A.D. 235.

The *Frank P. Dow, Inc.,* case, *supra*, cites and analyzes the leading authorities and also provides a salient indication of the vital element

of proof necessary on the substantiality of modification or reconstruction of the machine. In that case, the imported machine was a gang-saw. Evidence established that the prime source of power could be an electric motor, a diesel engine, or a steam engine, and that merely connecting a V-belt to any of these sources of power would enable operation by the machine without modification of the machine *per se*. However, there were two other functions of that machine which required electricity, an electric motor-driven automatic pressure lubricator, and a fully automatic overhang electric motor control. The witness testified that, in lieu of the electric motor-driven automatic pressure lubricator, a ratchet could be used. In said decision, the court made the following comment:

\* \* \* While it may be true that a ratchet may be used for automatic lubrication, such as in exhibit 2, there is no evidence that a machine, such as is involved herein, designed and imported with an electric motor for *automatic lubrication*, can be converted to use a ratchet, *without substantial modification* or reconstruction of the functional properties of the machine. Accordingly, this electrical feature alone brings the imported gangsaw within the purview of "articles having as an essential feature an electrical element or device" under paragraph 353, *supra*. [Emphasis added.]

A second electrically operated feature was an automatic overhang control which function, the record indicated, could have been performed by having "the saws \* \* \* dipped forward in the frame of the machine." However, the record did not show what the necessary modification to the machine might be to accomplish this. The court therein concluded:

\* \* \* Accordingly, in view of the lack of evidence indicating what modification is necessary to accomplish the change, this electrical feature also brings the imported merchandise within the purview of paragraph 353, as modified, *supra*.

The foregoing facts and law aid us in the instant case. We deal first with the five Willmes pressers illustrated and described in exhibit 2.

Exhibit 2, supported by the testimony of record, shows two motors marked "A" and "B" to be the only electrical devices on each machine. Each motor is easily removable, requiring, to do so, the witness stated, about on hour's labor each. It is noted that the presser *per se*, without the motors, is capable of functioning as such, whether with a gasoline motor, or other interchangeable power sources, whichever might be convenient. The fact that electricity is chosen to power the machine is not of significance. The electrical features, the two motors, are not essential. The instant machine, *per se*, unlike others described, *supra*, with multiple electrical features and functions, is not complex. Substitution of power other than electricity, according to credible testi-

mony of a qualified witness, which this court accepts, would not require substantial modification or reconstruction of the machine *per se*. The fact that the witness never knew or had never seen the machine used with other than electrical power is not significant. See *United States v. Baker Perkins et al.*, *supra*. The motors were not dedicated. They were standard motors which could be used elsewhere, generally. They were not part of an entirety in the tariff sense. In view of the foregoing and based upon the stipulation of counsel that said merchandise utilizes, modifies, and applies energy and force, and transmits motion, it has been satisfactorily established that the pressers involved herein do not fall within the purview of paragraph 353, *supra*, as classified, but should have been classified under the provisions of paragraph 372, *supra*, as claimed. The electric motors, therefore, should have been held to be separately dutiable under the *eo nomine* provision for motors, as provided for in paragraph 353, *supra*, as claimed. However, it is to be noted that the appraisement of the pressers is predicated upon the basis that each press, together with its motors, constituted an entirety and no separate value for each of said items was returned by the appraiser. Therefore, the appraisement was invalid and void and the liquidation of the entry premature. Protest 58/7790 is, therefore, premature and is dismissed pursuant to 28 U.S.C., section 2636(d), and said protest is remanded to a single judge to determine the proper dutiable value of the merchandise.

We turn now to the apple peeler, exhibit 3. Each of the arguments used hereinbefore to disprove the Willmes presser as a machine, having as an essential feature an electrical element or device, applies with even greater force. The apple peeler is illustrated with a motor, but credible testimony of record tells us that the machine was imported without a motor. As imported, therefore, the apple peeler *per se* was without a single electrical element or device, and the record amply establishes that said article does not fall within the purview of paragraph 353, *supra*, as classified. Therefore, in view of the stipulation of counsel that said apple peeler utilizes, modifies, and applies energy and force, and transmits motion, protest 62/8055 covering said apple peeler, is sustained as to the claim at $11\frac{1}{2}$ per centum ad valorem under the provisions of paragraph 372, *supra*.

Judgment will be entered accordingly.