(C.D. 3830)

CASTELAZO & ASSOCIATES, A/C L. E. DIXON CO. ET AL. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 22, 1969)

*Stein & Shostak* (*S. Richard Shostak* of counsel) for the plaintiffs:
*William D. Ruckelshaus*, Assistant Attorney General (*Bernard J. Babb*, trial attorney), for the defendant.

Before RAO, FORD, and WILSON, Judges

WILSON, Judge: These four protests, consolidated for purposes of trial, cover ten separate entries of mechanical and structural parts, as well as electrical motors and other electrical components, which, when assembled and combined, form a so-called "aerial tramway" that has been constructed at Palm Springs, California. The entries were made between September 18, 1962 and May 22, 1963 at the port of Los Angeles by customhouse brokers Castelazo & Associates for the actual importer, L.E. Dixon Co. The merchandise was manufactured in and exported from Switzerland.

Counsel stipulated that the imported merchandise is in chief value of metal and that the entire tramway "is an apparatus which modifies, utilizes energy or force, mechanically increases the intensity and applied force, or changes its direction and changes one form of motion or energy into another form." At R. 33–34 the following appears:

JUDGE WILSON : * * *

I assume it to be the substance of your contention that while some type of motive power is essential to the operation of the conveyance that it need not necessarily be electrical, it may be something else.

MR. SHOSTAK : Yes, your Honor. This is the age-old 372 versus 353 chestnut as to whether you can run a mechanical machine with power other than electrical, assuming that you show it's mechanical.

At R. 36–37 the following appears:

MR. SHOSTAK : I offer to stipulate that if a diesel engine is substituted for an electric motor, that the remaining machine utilizes energy or force, mechanically increases the intensity of an applied force or changes its direction, and changes one form of motion or energy into another form.

MR. BABB : Without conceding, your Honor, that what we contend is essential here, the electrical elements are essential, we will agree that if a diesel engine were used the tramway would do those things mentioned in the stipulation.

The official papers were received in evidence without being marked.

The collector of customs at Los Angeles classified the imported merchandise under paragraph 353 of the Tariff Act of 1930, as modified by trade agreements (Presidential proclamations), T.D. 55615 and T.D. 55816, as articles or parts of articles having as an essential feature an electrical element or device, and assessed duty at the rate of 12½ per centum ad valorem.

Plaintiffs contend that the non-electrical portions of the imported merchandise are properly dutiable at 10½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930, as modified by T.D. 55615 and T.D. 55816, as machines and/or parts, not specially provided for, wholly or in chief value of metal.

Plaintiffs abandoned their claim for reclassification of the merchandise in entry 48242 of March 7, 1963 covered by protest 66/57335 and said claim will be dismissed. Plaintiffs having stricken entry 56373 of April 19, 1963 from protest 66/57336, the said protest must be dismissed as to entry 56373. Plaintiffs' witness testified and their brief states that entries 50782, 53767 and 62936 of protests 66/57335 and 66/57336 include non-electrical equipment as well as electrical equipment. Hence plaintiffs assert that said two protests should be remanded

for finding of separate values pursuant to Title 28, U.S.C.A., section 2636(d).

The statutes considered are as follows:

Paragraph 353 of the Tariff Act of 1930, as modified by T.D. 55615 and T.D. 55816, reads, so far as pertinent:

> Articles having as an essential feature an electrical element or device, such as electric motors * * * all of the foregoing and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for:
>
>      \*     \*     \*     \*     \*     \*     \*
>
>      Other (except the following and parts thereof: * * * motors * * *)_____ 12½% ad val.

Paragraph 372 of the above act, as above modified, reads so far as pertinent:

> Machines, finished or unfinished, not specially provided for:
>
>      \*     \*     \*     \*     \*     \*     \*
>
>      Other (except * * *)_____ 10½% ad val.
>
> Parts, not specially provided for, wholly or in chief value of metal * * * of any article provided for in any item 372 of this Part:
>
>      \*     \*     \*     \*     \*     \*     \*
>
>      Other (except textile pins)_____ The rate for the article of which they are parts.

Plaintiffs offered the oral testimony of Michael Graves, a licensed civil mechanical structural engineer in California who received a civil engineering degree in 1934 from the University of Southern California. He has had extensive practical experience in designing and constructing buildings, ships, dams, and other large projects. He was the chief engineer for the Palm Springs aerial tramway, the project in which the imported merchandise before us was used. His duties with reference to said project were to build it. This he did.

Mr. Graves was shown the entries involved herein and testified that he is familiar with all of the invoiced components of the tramway. His testimony with reference to the entries includes the following:

Re entry 17876 of September 26, 1962, protest 66/62298: All the invoiced articles are mechanical sheaves and structural steel. None is electrical; all are part of the tramway; the sheaves are located in the valley station which is the lower station, and also in the upper stations where the working cables are wrapped around the sheaves; the sheave is a wheel with a groove in it to take care of the cable, and is properly

sized for the particular cable. He identified the sheaves on the upper right hand corner of exhibit 1.

Re entry 15806 of September 18, 1962, protest 66/62353: The invoiced merchandise is described as "20 track cable shoes"; they went on top of the horizontal beams on each tower; the main cable which is about 3 inches in diameter rested on those shoes; the shoes are not electrical.

Re entry 30488 of November 27, 1962, protest 66/57335: All of the invoiced merchandise consists of mechanical and structural supports at the valley and mountain stations; there are no electrical parts.

Re entry 34279 of December 17, 1962, protest 66/57335: The articles are mostly structural supports for supporting the cable at the different towers, and include saddle beams and other items. He identified the saddle beams on exhibit 2 on the top of tower No. 5; shoes are on the top of the saddle and inside the saddle there are rollers for the rolling and auxiliary lines. None are electrical.

Re entry 46827 of February 27, 1963, protest 66/57335: All the articles are mechanical equipment for the valley station and also for the mountain stations and consist mostly of large sheaves; the invoiced "auxiliary drive" is a drive used in case of failure of the electrical power, when two passenger cars, one coming up and one going down are stalled, in which event the auxiliary power is run by a gasoline engine to carry a small auxiliary four passenger car to take people from the main cabins. It is installed in the Palm Springs tramway, has been utilized and when utilized there is nothing electrical. He identified exhibit 3 which is a photograph of an arrangement similar to the Palm Springs aerial tramway, wherein a Chrysler gasoline engine is in position to drive the auxiliary line or the main line. He marked the photograph "aux" for auxiliary line and "main" on the main drive.

He identified a general plan, exhibit 4, of the machine room at the Palm Springs aerial tramway; all of the merchandise is imported; it was drawn by a Swiss engineer and is a design or blueprint from which he worked and built the foundation and everything else for the tramway; it represents the tramway, installed. He pointed out the labeled auxiliary gasoline Oldsmobile 206-horsepower motor around which he placed a circle, and auxiliary line drive, which is never driven by electricity, around which he also placed a circle and drew an arrow connecting it to the auxiliary cable. It is joined by three sprockets and three sets of drive chains, the gasoline engine being in a sprocket or gearing which drives the sheave that operates the auxiliary cable. As set up, the Oldsmobile engine has nothing to do with the main drive. He showed how the auxiliary (gasoline) drive could be connected with the main (electrical motor) drive by utilizing identical sprockets; it

takes about one hour to put three chains from the Oldsmobile gasoline engine to a coupling; the electrical engine is disconnected and becomes all mechanical at the point where he drew a double red line.

He identified exhibit 5, a photograph which shows the main gear, the electric motor and the bull wheel at Palm Springs. It shows the sprockets at the coupling where the main gearing is connected to the electric motor and provision at this point for auxiliary drive. It is a photograph of what is in the map form, exhibit 4. He stated that when the electrical motor stalled the main drive was hooked up to the auxiliary motor which took about an hour to disconnect the electrical portion and hook up the auxiliary portion. This enabled the cars which were suspended in mid-air to be brought down to the valley station. He became familar with electrical motors during his training and stated that the imported electrical motor is a 500 standard a.c. three-phase electric motor which can be used in other applications for many purposes and is not dedicated or intended exclusively for its use for the Palm Springs aerial tramway "Because it's a standard piece of equipment that can be used."

He also testified that if he were going to utilize a different source of power than electrical motor to this tramway, he could use a diesel engine to replace it.

Re entry 48242 of March 7, 1963, protest 66/57335: There is nothing electrical about the invoiced articles used in the installation of the tramway. All are structural pieces of metal. Plaintiffs have abandoned this entry in protest 66/57335.

Re entry 50782 of March 21, 1963, protest 66/57335: Except for the last four items invoiced which are *not* electrical, the other equipment is electrical and was manufactured by Brown, Boveri & Company, Limited of Baden, Switzerland, sub-contractors for Von Roll as the latter are not manufacturers of electrical equipment. He marked the non-electrical equipment in red on the invoice, which are passenger cabins, supporting frame works (hangers) for cabins, and watertanks. An "Advice Note" from Brown, Boveri covering all invoiced items except the last four invoiced items was marked exhibit 6 and covers the invoiced electrical equipment. He identified a photograph, exhibit 7, of a passenger car (cabin), of which there are two going up and down. The two cabins operate as a tandem.

Re entry 53767 of April 8, 1963, protest 66/57335: Except for the last invoiced items commencing with one relay box, which are electrical, the remainder of the items are mechanical items. The electrical items are mostly safety devices protecting from lightning.

Re entry 56373 of April 19, 1963, protest 66/57335: This invoice covers travelling works, devices or rollers on which the cars run on

the cables. The rollers are on the top of the car. He identified them by a red circle on exhibit 8. They are not electrical, but essential to the operation of the tramway as are the parts he heretofore described. This entry 56373 of April 19, 1963 was stricken from protest 66/57336.

Re entry 62936 of May 22, 1963, protest 66/57336: The first two invoiced cases (Nos. 55 and 56) cover electrical equipment invoiced as a monobloc (circled in red in exhibit 4) and accessories, while the third invoiced case (No. 57) covers a replacement for a non-electric sheave, identified in exhibit 1, which was dropped. The sheave fell when handled by the temporary working cable-ways between tower 1 and tower 2 and went down into the bottom of the canyon when it was on its way to the mountain station. It was easier to get one from Switzerland than try to retrieve it from the bottom of the canyon depicted in the picture, exhibit 9. Mr. Graves testified that in taking out the electric motor and replacing it with the diesel engine, there are no modifications whatsoever to the structure or mechanical portions of the tramway.

Under cross-examination Mr. Graves' direct testimony was not changed.

Mr. Graves further testified that he knows of no tramways that are operated by other than electrical power. He is quite familiar with diesel engines because "all our construction equipment on our different jobs in the dam, all the cranes are powered by diesel engine." He stated that you can design a diesel engine for any number of revolutions per minute. It could be 2,000 or 1,500. He said (R. 45–46):

* * * And, as a matter of fact, you can decrease or accelerate by giving more gas or oil, whatever you want, talking diesel. You can decelerate or accelerate the diesel engine. That is a control which is important to know, that's the reason why they have the tachometer, to show them how fast the r.p.m. of the diesel engine is operating, especially right now they are doing it on the gasoline engine.

He stated that the tachometer is an electrical control but if a diesel engine were used, he could design a gadget with little pulleys to take it up to the control room which will show an indication of the revolutions per minute without electrical means. He said it would be easy to put a small sheave around the drive shaft which would revolve and pull a little chain, to the top of the pulley, and show revolutions per minute. He had done so on previous occasions, but not in this case. It is a small unimportant thing. It would take four hours to remove an electrical motor, disconnect and reassemble it and put it out of the engine room. According to Mr. Graves' testimony, the following seven entries do *not* include electrical equipment, to wit:

| Entry No. | Date of entry | Protest No. |
|---|---|---|
| 1. 17876 | September 26, 1962 | 66/62298 |
| 2. 15806 | September 18, 1962 | 66/62353 |
| 3. 30488 | November 27, 1962 | 66/57335 |
| 4. 34279 | December 17, 1962 | 66/57335 |
| 5. 46827 | February 27, 1963 | 66/57335 |
| 6. 56373 | April 19, 1963 | · 66/57335 |
| 7. 48242 | March 7, 1963 | 66/57335 [entry abandoned] |

As to the foregoing first six entries, plaintiffs claim that the mechanical and/or structural portions of the tramway are dutiable at 10½ per centum ad valorem under paragraph 372, T.D. 55615 and T.D. 55816 (for machines and) "Parts, not specially provided for, wholly or in chief value of metal * * * of any article provided for in any item 372 of this Part: * * * Other * * *." Government counsel, at the hearing (R. 3), stated that "* * * with respect to the classification they were done as parts under [paragraph] 353." Therefore, the above items may be considered as *parts*, the word *parts* being used in both paragraphs 353 and 372, the former referring to articles having as an essential feature an electrical element or device such as electric motors, the latter referring to machines.

The testimony of Mr. Graves discloses that the following three entries *include* electrical equipment as well as non-electrical equipment to wit:

| Entry No. | Date of entry | Protest No. |
|---|---|---|
| 1. 50782 | March 21, 1963 | 66/57335 |
| 2. 53767 | April 8, 1963 | 66/57335 |
| 3. 62936 | May 22, 1963 | 66/57336 |

As to the foregoing three entries, plaintiffs claim that these two protests should be remanded to a single judge who shall determine the proper dutiable value of the electrical equipment and of the non-electrical equipment pursuant to the provisions of Title 28, U.S.C.A., section 2636(d), or held to be dutiable under paragraph 372 at 10½ per centum ad valorem, *supra*.

The overall testimony of Mr. Graves, together with the exhibits, discloses that no modifications are required to the structural or mechanical portions of the tramway if a diesel engine is substituted for the electrical motor.

The overall expense for substituting a diesel engine for the electrical motor is only a few hundred dollars for labor and material. When considered against the $6,000,000 cost of the tramway such expense is trivial and inconsequential, especially as the tramway would work and operate as efficiently and substantially as it does when electrically operated.

Plaintiffs have met those non-essentiality requirements which are referred to in the cases of *United States* v. *Baker Perkins, Inc., R.F.* ·

*Downing Co., Inc.*, 46 CCPA 128, C.A.D. 714; *United States* v. *Dryden Rubber Co.*, 22 CCPA 51, T.D. 47050; *Ralph C. Coxhead Corp.* v. *United States*, 22 CCPA 96, T.D. 47080; *W. C. Sullivan & Company* v. *United States*, 46 Cust. Ct. 31, C.D. 2229; *Arthur J. Fritz & Co.* v. *United States*, 46 Cust. Ct. 215, C.D. 2258; *R.J. Saunders Co., Inc.* v. *United States*, 47 Cust. Ct. 319, Abstract 66095; *Keer, Mauer Company* v. *United States*, 48 Cust. Ct. 205, C.D. 2336; *Owens-Illinois Glass Company* v. *United States*, 48 Cust. Ct. 263, C.D. 2347; *Gallagher & Ascher Company* v. *United States*, 53 Cust. Ct. 290, Abstract 68823; *Soderhamn Machine Mfg. Co.* v. *United States*, 54 Cust. Ct. 369, Abstract 69205; *Brown Boveri Corp., Gehrig, Hoban & Co., Inc.* v. *United States*, 58 Cust. Ct. 131, C.D. 2905; *Elser Elevator Company* v. *United States*, 58 Cust. Ct. 432, C.D. 3009; *Inter Maritime Fwdg. Co., Inc.* v. *United States*, 58 Cust. Ct. 507, C.D. 3030; *Gene Miller, Atwood Imports, Inc.* v. *United States*, 59 Cust. Ct. 212, C.D. 3125; *John H. Faunce Phila., Inc.* v. *United States*, 60 Cust. Ct. 369, C.D. 3393.

In *United States* v. *Associated Mfg. Co.*, 30 CCPA 236, 239, C.A.D. 238, the court stated that not "every mechanical contrivance which utilizes or applies or modifies energy or force or for the transmission of motion must be considered in a tariff sense a machine. *United States* v. *Wm. Goldenblum & Co.*, 18 C.C.P.A. (Customs) 367, T.D. 44616; *United States* v. *Guth Stern & Co., Inc.*, 21 C.C.P.A. (Customs) 246, T.D. 46777; *United States* v. *The Cottage Creamery Co.*, 22 C.C.P.A. (Customs) 290, T.D. 47346; *United States* v. *Race Co.*, 22 C.C.P.A. (Customs) 327, T.D. 47362; *United States* v. *Dyson Shipping Co., Inc., et al.*, 29 C.C.P.A. (Customs) 148, C.A.D. 184."

It has also been stated that "A common meaning of the word 'machine,' found in the dictionaries which we referred to in the *IDL* case, *supra* [*United States* v. *Idl Mfg. & Sales Corp.*, 48 CCPA 17, C.A.D. 756], is a device which may be either simple or complex, whose function is to increase the intensity of an applied force, or to change its direction, or to change one form of motion or energy into another form. Cf. The Columbia Encyclopedia, 2d Ed." *Nord Light, Inc.* v. *United States*, 49 CCPA 12, 15, C.A.D. 786. See also *Rosenblad Corp.* v. *United States*, 49 CCPA 81, C.A.D. 800; *The Durst Mfg. Co., Inc.* v. *United States*, 50 CCPA 56, C.A.D. 820.

The stipulations of counsel heretofore referred to meet the common meaning definitions as stated in the decisions, *supra*. It follows that as to the non-electrical equipment in the invoices in the six above enumerated entries, such articles are properly subject to duty under paragraph 372, T.D. 55615 and T.D. 55816, as contended for by plaintiffs, for machines or parts.

In *John A. Steer & Co.* v. *United States*, 24 CCPA 293, T.D. 48737, several shipments of merchandise, comprising when assembled a com-

plete anhydrous ammonia plant composed of compressors, heaters, tanks, condensers, and refrigerators, were held dutiable as all other machines under paragraph 372, Tariff Act of 1930, rather than as articles having as an essential feature an electrical element or device in paragraph 353. As set up in the United States the motor power was supplied by an electric motor, no motor having been imported. The record there as here showed operation by other power, there by either electric, steam or water power, here by either electric or diesel engine, was possible and practical.

It should also follow on the record in the case at bar that the electrical equipment and the non-electrical equipment in the invoices in the three other entries enumerated, *supra*, should be separately appraised. The appraisements of the articles in the said entries having been predicated on the basis that electrical and the non-electrical articles constituted entireties, the appraiser did not return separate values for each of said items. Therefore, the appraisements were invalid and void, the liquidations of these entries in the two protests 66/57335 and 66/57336 were premature as were the protests relating to said three entries. Accordingly, the said protests must be dismissed as to said three entries, pursuant to Title 28, U.S.C.A., section 2636(d), and the cases remanded to a single judge to determine the proper dutiable values of said merchandise in the manner prescribed by law. *Clarence S. Holmes* v. *United States*, 37 Cust. Ct. 260, C.D. 1833; *Henry A. Wess, Inc.* v. *United States*, 43 Cust. Ct. 78, C.D. 2107; *Supreme Woodworking Machine et al.* v. *United States*, 54 Cust. Ct. 368, Abstract 69204; *F. B. Vandegrift & Co., Inc.* v. *United States*, 56 Cust. Ct. 46, C.D. 2610; *Arnhold Ceramics, Inc.* v. *United States*, 56 Cust. Ct. 416, C.D. 2668; *Consolidated International Equipment & Supply Co.* v. *United States*, 56 Cust. Ct. 442, C.D. 2671.

On the entire record the plaintiffs have made a *prima facie* case in support of their contentions which have not been counteracted in any respect by evidence on behalf of the defendant. Accordingly we conclude that the importations are parts of machines, wholly or in chief value of metal and not specially provided for. Therefore the articles imported in the following six entries are held subject to duty at 10½ per centum ad valorem under paragraph 372, and trade agreements (Presidential proclamations), T.D. 55615 and T.D. 55816, *supra*:

| Entry No. | Date of entry | Protest No. |
|---|---|---|
| 1. 17876 | September 26, 1962 | 66/62298 |
| 2. 15806 | September 18, 1962 | 66/62353 |
| 3. 30488 | November 27, 1962 | 66/57335 |
| 4. 34279 | December 17, 1962 | 66/57335 |
| 5. 46827 | February 27, 1963 | 66/57335 |
| 6. 56373 | April 19, 1963 | 66/57335 |

As to the following three entries, the protests are invalid and void, and must be remanded to a single judge to determine the proper dutiable value of the electrical and the non-electrical equipment in the manner provided by law, Title 28, U.S.C.A., section 2636(d):

| Entry No. | Date of entry | Protest No. |
|---|---|---|
| 1. 50782 | March 21, 1963 | 66/57335 |
| 2. 53767 | April 8, 1963 | 66/57335 |
| 3. 62936 | May 22, 1963 | 66/57336 |

Plaintiffs having abandoned entry 48242 of March 7, 1963 covered by protest 66/57335, said protest will be dismissed as to said entry 48242. Plaintiffs having stricken entry 56373 of April 19, 1963 from protest 66/57336, said protest must be dismissed as to said entry 56373.

Judgment will be entered accordingly.